Slip Op. 11-107

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YIEH PHUI ENTERPRISE CO., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 10-00310 <br><br> **PUBLIC VERSION** <br> [Confidential material deleted <br> on page 11.] |

**OPINION**

[Administrative review results sustained.]

Dated: August 24, 2011

Appleton Luff Pte Ltd. (Kelly A. Slater) for Plaintiff Yieh Phui Enterprise Co. Ltd.

Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Melissa M. Devine); and Office of Chief Counsel for Import Administration, Department of Commerce (William G. Isasi), of counsel, for Defendant United States.

Schagrin Associates (Roger B. Schagrin, John W. Bohn, Michael J. Brown) for Defendant-Intervenor Allied Tube and Conduit Corporation.

King & Spalding (Gilbert B. Kaplan, Brian E. McGill, Daniel L. Schneiderman, P. Lee Smith) for Defendant-Intervenor Wheatland Tube Company.

Gordon, Judge: This action involves an administrative review conducted by the United States Department of Commerce ("Commerce") of the antidumping duty order covering certain circular welded carbon steel pipes and tubes from Taiwan. See Circular Welded Carbon Steel Pipes and Tubes from Taiwan, 75 Fed. Reg. 62,366 (Dep't of Commerce Oct. 8, 2010) (final results admin. review) ("Final Results"); see also Issues

and Decision Memorandum, A-583-008 (Dep't of Commerce Sept. 30, 2010) available at http://www.ia.ita.doc.gov/frn/summary/TAIWAN/2010-25298-1.pdf (last visited Aug. 24, 2011) ("Decision Memorandum"). Before the court is Plaintiff Yieh Phui Enterprise Company's ("Yieh Phui") motion for judgment on the agency record challenging Commerce's selection of invoice date as the date of sale for Plaintiff's U.S. sales. The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006). For the reasons set forth below, the Final Results are sustained.

## I. Standard of Review

For administrative reviews of antidumping duty orders, the court sustains Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Dupont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d. ed. 2011). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Edward D. Re, Bernard J. Babb, and Susan M. Koplin, 8 West's Fed. Forms, National Courts § 13342 (2d ed. 2011).

Separately, when reviewing Commerce's interpretation of its regulations, the court accords the agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Am. Signature, Inc. v. United States, 598 F.3d 816, 827 (Fed. Cir. 2010) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)).

## II. Background

In general "an antidumping analysis involves a comparison of export price or constructed export price in the United States with normal value in the foreign market." 19 C.F.R. § 351.401(a) (2010)[2]; see also 19 U.S.C. §§ 1677a, 1677b. The date of sale for a respondent's U.S. sales is part of the export price calculation, which is then

---

[2] Further citations to title 19 of the Code of Federal Regulations are to the 2010 edition.

compared to normal value.  See 19 C.F.R. § 351.401(a), (i).  In the preliminary results Commerce used invoice date as the date of sale for Plaintiff's U.S. sales.  In its administrative case brief Plaintiff argued that Commerce erred because Commerce's "calculation of the frequency of change to the material terms of sale between the final contract date and the invoice date was incorrectly based on a selective review of sales documents," and that Plaintiff "had an extraordinarily low percentage of changes after the final contract date for its U.S. sales."  Yieh Phui Admin. Case Br. 3-4, PD 74.[3]  Plaintiff also argued that the difference in its U.S. sales and home market sales processes mandated use of contract date.  Id.  Plaintiff also argued that the facts and circumstances of its U.S. sales were similar to other administrative decisions in which Commerce used a date other than invoice date.

     Commerce was not persuaded.  In the Final Results Commerce provided a detailed, well-reasoned response to each of Plaintiff's arguments, and continued to use invoice date for Plaintiff's U.S. sales.  See Decision Memorandum at 4-8.  Specifically, Commerce found that Plaintiff underreported the total number of U.S. sales for which the material terms changed after contract date and therefore understated those changes during the period of review.  Id. at 8; Final Analysis Memorandum for Yieh Phui Enterprise Co., Ltd.: Circular Welded Carbon Steel Pipes and Tubes from Taiwan (A-583-008), May 1, 2008-April 30, 2009 at 3-4 ("Confidential Final Analysis Memorandum"), CD 24.  Commerce concluded that the material terms of multiple U.S.

---

[3] "PD__" refers to a document contained in the public administrative record.  "CD__" refers to a document contained in the confidential record.

sales changed after contract date and selected invoice date as the date of sale. Id. Commerce also rejected Plaintiff's arguments that relied on differences in Plaintiff's U.S. and home market sales processes to establish contract date as the date of sale. See Decision Memorandum at 6-8.

### III. Discussion

The antidumping statute does not specifically address Commerce's selection of date of sale. Commerce, however, has a long-standing regulation that does, 19 C.F.R. § 351.401(i) ("Date of Sale"). Section 351.401(i) provides that Commerce "normally will use the date of invoice" as the date of sale. The regulation specifies invoice date as the presumptive date of sale because

> as a matter of commercial reality, the date on which the terms of a sale are first agreed is not necessarily the date on which those terms are finally established. In the Department's experience, price and quantity are often subject to continued negotiation between the buyer and the seller until a sale is invoiced. The existence of an enforceable sales agreement between the buyer and the seller does not alter the fact that, as a practical matter, customers frequently change their minds and sellers are responsive to those changes. The Department also has found that in many industries, even though a buyer and seller may initially agree on the terms of a sale, those terms remain negotiable and are not finally established until the sale is invoiced. Thus, the date on which the buyer and seller appear to agree on the terms of a sale is not necessarily the date on which the terms of sale actually are established. The Department also has found that in most industries, the negotiation of a sale can be a complex process in which the details often are not committed to writing. In such situations, the Department lacks a firm basis for determining when the material terms were established. In fact, it is not uncommon for the buyer and seller themselves to disagree about the exact date on which the terms became final. However, for them, this theoretical date usually has little, if any, relevance. From their perspective, the relevant issue is that

>  the terms be fixed when the seller demands payment (i.e., when the sale is invoiced).

Antidumping Duties; Countervailing Duties: Final Rule, 62 Fed. Reg. 27,296, 27,348-49 (Dep't of Commerce May 19, 1997) ("Preamble").  Notwithstanding the regulatory presumption of invoice date, Commerce "may use a date other than the date of invoice if [Commerce] is satisfied that a different date better reflects the date on which the exporter or producer establishes the material terms of sale." 19 C.F.R. § 351.401(i).  In implementing the regulation, Commerce further explained that if

> the Department is presented with satisfactory evidence that the material terms of sale are finally established on a date other than the date of invoice, the Department will use that alternative date as the date of sale. For example, in situations involving large custom-made merchandise in which the parties engage in formal negotiation and contracting procedures, the Department usually will use a date other than the date of invoice. However, the Department emphasizes that in these situations, the terms of sale must be firmly established and not merely proposed. A preliminary agreement on terms, even if reduced to writing, in an industry where renegotiation is common does not provide any reliable indication that the terms are truly "established" in the minds of the buyer and seller. This holds even if, for a particular sale, the terms were not renegotiated.

62 Fed. Reg. at 27,349.  Commerce therefore has some flexibility in selecting the date of sale; the presumption in favor of invoice date is not conclusive. See, e.g., Circular Welded Non-Alloy Steel Pipe From the Republic of Korea, 63 Fed. Reg. 32,833, 32,385 (Dep't of Commerce 1998) (While . . . the Department prefers to use invoice date as the date of sale, we are mindful that this preference does not require the use of invoice date if the facts of a case indicate a different date better reflects the time at which the material terms of sale were established. Indeed, . . .  both the Proposed and Final

Regulations speak to giving the Department <u>flexibility</u> to abandon the use of invoice date.") (emphasis added); <u>Issues and Decision Memorandum for the Antidumping Duty Administrative Review of Certain Welded Carbon Steel Pipes and Tubes from Thailand</u>, A-549-502 at Comment 1 (Dep't of Commerce Oct. 4, 2000) ("[T]he Department recognizes the need for <u>flexibility</u> in those circumstances in which an alternative date better reflects the date of sale.") (emphasis added) <u>available at</u> http://www.ia.ita.doc.gov/frn/summary/thailand/00-26385-1.txt (last visited Aug. 24, 2011).

      Plaintiff posits a "legal" argument that Commerce was too inflexible (or not flexible enough) in applying its date of sale regulation in the <u>Final Results</u>.  This though is not so much a "legal" argument (challenging Commerce's interpretation of its own regulation), as it is a concession by Plaintiff that it needs a "flexibly" applied date of sale regulation to achieve its desired result.  The court, however, cannot meaningfully or sensibly review whether Commerce's date of sale selection was flexible or inflexible (words that do not appear in the regulation), but instead must focus on the more concrete and reviewable problem of whether a reasonable mind would conclude that the administrative record as a whole demonstrates that Plaintiff's material terms of its U.S. sales were "finally" and "firmly" established on contract date. <u>Preamble</u>, 62 Fed. Reg. at 27,349; <u>see, e.g.</u>, <u>Allied Tube and Conduit Corp. v. United States</u>, 24 CIT 1357, 1371-72, 127 F. Supp. 2d 207, 220 (2000) ("<u>Allied Tube</u>") ("Plaintiff, therefore, must demonstrate that it presented Commerce with evidence of sufficient weight and

authority as to justify its factual conclusions as the only reasonable outcome. If, however, the record indicates that Commerce's decision to use the invoice date as the date of sale was reasonable and was supported by substantial evidence, Plaintiff's arguments must fail.").[4]

In making its "legal" argument about flexibility, Plaintiff relies on various quotes contained in Nucor Corp. v. United States, 33 CIT __, __, 612 F. Supp. 2d 1264, 1341 (2009) ("Nucor") ("Flexibility in Commerce's date of sale analysis is more than a mere regulatory preference; it rises to the level of a statutory mandate." (citing Allied Tube, 24 CIT at 1368, 127 F. Supp. 2d at 216-17)). Pl. Mot. for J. on the Agency R. 7, ECF No. 35 ("Pl. Br."). Plaintiff, however, fails to cite or discuss the subsequent history of Nucor, which tempers, if not mutes entirely, the court's earlier, intermediate decision. In Nucor the court remanded Commerce's selection of invoice date for further consideration. Nucor 33 CIT at ___, 612 F. Supp. 2d at 1323. On remand Commerce provided a comprehensive, well-reasoned discussion of the date of sale issue and regulation, one in which Commerce determined that its original selection of invoice date and its date of sale methodology were correct. See Nucor Corp. v. United States, Consol. Court No. 05-00616, Final Results of Redetermination at 43-51, 76-91 (Nov. 6, 2009), ECF No.

---

[4] During the administrative review Plaintiff attempted to argue that Commerce had an established administrative practice of using contract date in situations similar to its own, citing prior administrative decisions in which Commerce applied contract date as the date of sale. In the Final Results Commerce disagreed and distinguished each of the prior administrative decisions cited by Plaintiff. Decision Memorandum at 4-7. Plaintiff has not presented that argument to the court, choosing not to pursue the issue of whether Commerce's selection of invoice date is inconsistent with prior administrative practice.

117 ("Nucor Remand Results").  The court then sustained Commerce's remand results in their entirety.  See Nucor Corp. v. United States, 34 CIT ___, Slip Op. 10-06 (Jan. 19, 2010) (sustaining remand results).  Given the intermediate posture of Nucor and its subsequent history, in the court's view it does not possess as much persuasive weight on the interpretation and application of 19 C.F.R. § 351.401(i) as Plaintiff contends.[5]  The more helpful and persuasive guide to Commerce's date of sale regulation is actually provided in the Nucor Remand Results, which Plaintiff has not cited nor addressed.

With that said, the court turns to Plaintiff's substantial evidence challenge and specifically, whether a reasonable mind would conclude that the administrative record as a whole demonstrates that Plaintiff's material terms of its U.S. sales were "finally" and "firmly" established on contract date.  This is a difficult issue for Plaintiff because, as Plaintiff concedes, material terms did change after contract date for a portion of Plaintiff's U.S. sales. Pl. Br. 10; see also Decision Memorandum at 4.  Given these changes, Plaintiff could not (and did not) argue that the material terms for all of its U.S. sales were finally and firmly established on contract date, (or that any changes to

---

[5] To the extent that the court's statement in Nucor ("Flexibility in Commerce's date of sale analysis is more than a mere regulatory preference; it rises to the level of a statutory mandate.") has any lingering precedential effect, this court declines to endorse that reading of the regulation.  If flexibility truly rose to the level of a statutory mandate, one would expect a wide and varied application of dates of sale in administrative reviews.  Commerce, however, rejected such "flexibility" when promulgating the regulation, opting for predictability and administrability in setting invoice date as the presumptive date of sale, subject to various alternatives if the record demonstrates that the material terms are finally and firmly established on an alternative date.

material terms were reflected in duly executed contract amendments). Plaintiff instead addresses this problem by arguing that the changes in material terms occurred too "infrequently" to justify a selection of invoice date. Pl. Br. 10-11. In other words, Commerce should have simply disregarded or ignored these changes. To support this argument Plaintiff provides a dictionary definition of the word "frequent." Pl. Br. 10. This though is not much help to the court. Leaving aside that the word "frequent" does not appear in the regulation, the critical question is not whether the raw number of Plaintiff's U.S. sales with material changes satisfies a dictionary definition of the word "frequent" or "infrequent" but whether those instances are so small as to be <u>de minimis</u> or negligible within the meaning of the regulation and antidumping statute. This is a question Plaintiff never addresses. During the administrative review Commerce observed that Plaintiff failed to "establish why the percentage [change in sales] should be considered 'extraordinarily low'. . . ." <u>Decision Memorandum</u> at 8. Likewise, here, Plaintiff fails to anchor its "frequency" argument to a statutory, regulatory, or administrative law standard[6] that the court may apply to review the reasonableness of Commerce's refusal to treat as <u>de minimis</u> or negligible Plaintiff's U.S. sales for which material terms changed.

It is not as if such standards do not exist. The statute and regulations do provide

---

[6] Perhaps the most logical source for such standards is Commerce's own prior administrative decisions involving the date of sale regulation. In its briefs before the court, however, Plaintiff did not analyze Commerce's prior administrative decisions to provide some guideline or benchmark as to what percentage of material changes Commerce may have disregarded in the past when selecting a date of sale other than invoice date.

some possible helpful guidelines, at least through analogy.  For example, Commerce treats "as de minimis any weighted-average dumping margin . . . that is less than 0.5 percent ad valorem. . . ."  19 C.F.R. § 351.106.  A 2 percent threshold applies to investigations.  19 U.S.C. § 1673b(b)(3).  There is also a 3 percent negligibility benchmark for country imports in injury determinations.  19 U.S.C. § 1677(23).  Needless to say, the frequency of material changes in Plaintiff's U.S. sales was greater than each of these measures.[7]

It is therefore not possible on this administrative record to conclude that the material terms of Plaintiff's U.S. sales were "finally" and "firmly" established on contract date, and by extension, that Commerce's selection of invoice date was unreasonable.  The fact that material terms of multiple sales changed during the period of review, combined with Commerce's reasonable inference that even more sales may have changed post-contract than originally determined, led Commerce to reasonably conclude that invoice date was appropriate.  Decision Memorandum at 8; see also Preamble, 62 Fed. Reg. at 27,348-49 ("The existence of an enforceable sales agreement between the buyer and the seller does not alter the fact that, as a practical matter, customers frequently change their minds and sellers are responsive to those

---

[7] Specifically, Commerce found that [    ] out of [    ] contracts ([    ] % ) involved changes to the final quantity term, which exceeded the quantity tolerance level for the respective sales contracts. Confidential Final Analysis Memorandum at 3-4. Moreover, Commerce determined that the [    ] % measure may have understated the frequency of change in material terms during the POR because of discrepancies that the agency observed when attempting to reconcile changes identified in the sample sales documentation submitted by Yieh Phui with those same sales as reported in Yieh Phui's sales database. Id.; Decision Memorandum at 5 n.2.

changes.").

As for Plaintiff's arguments that its U.S. sales processes and course of conduct between Plaintiff and its U.S. customers mandate selection of contract date, Commerce reasonably considered and rejected them. Specifically, Plaintiff argues that Commerce failed to consider Yieh Phui's formal negotiation and contracting procedures for U.S. sales, which, according to Plaintiff, demonstrate that the "terms of sale agreed upon by Yieh Phui and its U.S. customers . . . were 'firmly' established and were not mere proposals." Pl. Br. 12. Plaintiff also argues that Commerce failed to consider the made-to-order nature of Yieh Phui's U.S. sales, and the amount of time required to produce that merchandise, as evidence that the material terms were in fact established on contract date. Pl. Br. 13. Plaintiff also references the course of conduct between Yieh Phui and its U.S. customers, arguing that the contracting parties "behaved in a contractually-bound manner" and that Yieh Phui "produced the merchandise per the specifications in the contract," which further demonstrates that the material terms were firmly established on contract date. Pl. Br. 14.

Apart from Plaintiff's reliance on Nucor to support these arguments (which, as discussed above, is of limited persuasive weight), taken alone, they are just not convincing on this administrative record. According to Plaintiff, its U.S. sales processes should, hypothetically at least, establish material terms of sale finally and firmly at contract date. In reality, material terms of Plaintiff's U.S. sales changed after contract date despite (1) the alleged commercial formalities, (2) the made to order nature of the

U.S. merchandise, and (3) the parties' course of conduct. See Decision Memorandum at 6-8.  And these changes were not reflected in duly executed contract amendments.  Under such circumstances Commerce's selection of invoice date, consistent with its date of sale regulation, see 19 C.F.R. § 351.401(i); Preamble, 62 Fed. Reg. at 27,349, is reasonable.

### IV. Conclusion

For the foregoing reasons the court sustains Commerce's date of sale determination.  Judgment will be entered accordingly.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated: August 24, 2011
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YIEH PHUI ENTERPRISE CO., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 10-00310 |

**JUDGMENT**

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now in conformity with that opinion, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment upon the Agency Record is denied; and it is further

**ORDERED** that judgment is entered for Defendant.

                                             /s/ Leo M. Gordon
                                            Judge Leo M. Gordon

Dated: August 24, 2011
      New York, New York